IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | | |
|---|---|---|
| Matthew Robert Budney, | ) | C/A No. 6:23-cv-03514-JD-KFM |
| Plaintiff, | ) ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. | ) ) ) | |
| Nurse Julie, Nurse Ashley, Sheriff Reynolds, Captain Lawson, Kim Little, Savannah Wall, Hanna Bishop, Lieutenant Reid, Officer Tollison, Nurse Grant, Nurse Billie, Officer Brown, Sheriff Deputy Payton, Lieutenant Maddox, Lieutenant Miller, Lieutenant Humphries, John Doe, | ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) ) | |

The plaintiff, a state prisoner proceeding *pro se* and *in forma pauperis*, brought this action pursuant to 42 U.S.C. § 1983 alleging violations of his constitutional rights. Pursuant to the provisions of 28 U.S.C. § 636(b), and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under 42 U.S.C. § 1983 and submit findings and recommendations to the district court.

The plaintiff's complaint was entered on the docket on July 20, 2023 (doc. 1). By order filed August 10, 2023, the plaintiff was given a specific time frame in which to bring his case into proper form for judicial screening, including submission of an amended complaint (doc. 6). The plaintiff complied with the court's order, bringing his case into proper form and submitted an amended complaint on August 31, 2023 (doc. 9). Having reviewed the plaintiff's amended complaint, the undersigned is of the opinion that the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds is sufficient to survive screening, and service will be recommended as to these defendants on that claim. However, the

remainder of the plaintiff's claims in his amended complaint fail to state a claim upon which relief may be granted; thus, they are subject to summary dismissal as outlined below.

### ALLEGATIONS

The plaintiff alleges that the defendants violated his constitutional rights while he was a pretrial detainee in the Laurens County Detention Center ("the Detention Center") (*id.*). He contends that an order extraditing him to South Carolina from North Carolina ordered that his medical needs be addressed and that the defendants violated that order (*id*. at 7–10, 12, 14–16, 29--30). The plaintiff alleges that he had syphilis when he was arrested and incarcerated at the Detention Center (*id*. at 16). He requested medical treatment and contact tracing, but his requests were denied (*id*. at 16, 30). Nurse Ashley examined the plaintiff a few days later (*id*. at 16). When Nurse Julie, Nurse Ashley, and Ofc. Teeter came to the plaintiff's cell later that same day, Nurse Julie would not do testing, contact tracing, or further treat the plaintiff's condition (*id*. at 16). This conversation was overheard by the whole dorm, violating the plaintiff's rights under the Health Insurance Portability and Accountability Act ("HIPAA") (*id*. at 7, 12, 16). The plaintiff was charged a fee for medical treatment when he requested the contact tracing and treatment, although he did not receive appropriate treatment (*id*. at 16–17). Because the plaintiff did not have money to pay for contact solution, he developed an infection in his eye and had to stop wearing his contacts (*id*. at 17).

The plaintiff alleges that on May 22, 2023, he was sexually harassed by another inmate, but the inmate was not immediately removed from the plaintiff's dorm, so he continued to sexually harass the plaintiff (*id*. at 10, 12, 19–20). He contends that Lt. Miller, Capt. Lawson, and Lt. Humphries failed to protect him from being harassed (*id*.). After the attack, the plaintiff requested mental health treatment, but he was charged a fee for the mental health sessions and Nurse Julie interrupted them (*id*. at 7, 20). On June 21, 2023, the plaintiff attended a mental health session with Kim Little that was illegally

recorded and then Nurse Ashley threw him out of the session (*id*. at 8, 20).  The next day, the plaintiff was seen by Savannah Wall with the department of mental health, but did not get the treatment he requested (*id*. at 8, 20).

On May 31, 2023, the plaintiff fell at the sink in his cell (*id*. at 17).  His injury was documented by Lt. White, Officer Teeter, Officer Moyer, and medical was summoned (*id*. at 17).  The plaintiff contends that he was not provided ice, an ace bandage, a crutch, wheelchair, or medication, after hurting his ankle (*id*. at 17–18).  The next day, the plaintiff's ankle was x-rayed, but the plaintiff had to hobble around and use a broom for a crutch (*id*. at 18).  The plaintiff further contends that a nurse falsified the medical records and indicated that he did not complain of pain (*id*. at 18).  That same day, the plaintiff contends that a DHEC representative came to see him about his complaints that he had syphilis and Nurse John Doe with DHEC only tested the plaintiff for AIDS and syphilis and not other sexually transmitted diseases (*id*. at 21).  Despite the plaintiff not receiving official treatment, the test results over the next month indicated that the plaintiff's condition improved (*id*. at 21).  Due to this, the plaintiff alleges that his food was being drugged (*id*. at 7, 21–22).

During the beginning of June, 2023, the plaintiff was kept for eight days in a small cell without a working sink (*id*. at 22).  The plaintiff continued to document blood that he found in his stool (*id*. at 22).  The plaintiff contends that he was taken for medical treatment on June 8, 2023, and was examined, but alleges that the doctor misdiagnosed him (*id*. at 22).  The plaintiff further contends that the medical records were falsified to show that the plaintiff had been manipulating a hemorrhoid even though that is not what the plaintiff did (*id*. at 22).  Two days later, June 10, 2023, Nurse Julie told the plaintiff to stop putting in sick calls for blood in his stool (*id*. at 23).  The plaintiff continued showing staff that walked by his cell evidence of his bloody stool on June 15, 2023 (*id*. at 23–24).  The plaintiff was then told that he would continue being charged for medical treatment when he continued reporting blood in his stool (*id*. at 24).

3

On July 4, 2023, the plaintiff fell and injured his knee (*id*. at 17).  On July 20, 2023, the plaintiff was taken for emergency care and diagnosed with ulcerative colitis, which he contends occurred because of his syphilis (*id*. at 23).  The plaintiff alleges that he requested contact solution at no charge because he was an indigent detainee, but none was provided because he could not afford it (*id*. at 17).  He further contends that Sheriff Reynolds denied requests by the plaintiff to obtain treatment for his eyes by an outside doctor (*id*. at 17).  The plaintiff contends that he complained about trouble with his eyesight, but his requests were ignored (*id*. at 19).

The plaintiff alleges that he requested accommodations under the Americans with Disabilities Act ("ADA") so he could access the same things that non-indigent detainees had access to (*id*. at 8, 18).  Because the plaintiff's request was denied, he had to make choices about what to use his limited funds for and was denied adequate cleaning supplies (*id*. at 18–19).  He further contends that he had to clean up his bloody stool with inadequate tissue and was not able to properly wash his hands on June 3, 2023 (*id*. at 24).  He also contends that his right to maintain hygiene was violated because he only got a haircut and shave when he was scheduled for court appearances and Ofc. Brown did not provide a clean showering area (*id*. at 9, 27–28).  He further contends that his rights were violated because he was not allowed free copies of his legal filings (*id*. at 29).

The plaintiff also contends that his due process rights were violated when he was charged with disciplinary offenses (including using profanity) on June 8, 2023 (*id*. at 10, 24).  The plaintiff contends that the disciplinary documents were forged and that his disciplinary hearing on June 9, 2023, was improper (*id*. at 10, 24–25).  The disciplinary hearing violated his due process rights because he did not get a notification of his rights, 24 hours notice, the person who wrote the report served it on him, he didn't get to call witnesses or question witnesses, did not have a mental health representative at the hearing, and did not have the ability to appeal the charge (*id*. at 25).

4

He further contends that his equal protection rights were violated because he was sent to the restricted housing area to serve his disciplinary time, but the inmate who sexually harassed him (due to an order that the plaintiff could not be around the other inmate) was allowed to return to less restrictive custody status without serving as much time as the plaintiff (*id*. at 25). He also contends that his equal protection rights were violated because SCDC inmates had access to shaves and haircuts that detainees at the Detention Center were not (*id*. at 28).

The plaintiff contends that his rights were violated because he was denied access to the grievance process when he was placed in the restricted housing area (*id*. at 7–8, 12, 25–26). He also contends that his grievances were improperly denied (*id*. at 28). The plaintiff also contends that he was denied access to the courts (*id*. at 9, 12). On June 8, 2023, the plaintiff requested help seeking a restraining order against nursing staff at the Detention Center, but he was not provided materials to do so, which denied him access to the courts (*id*. at 23). Because he was denied access to the courts, the plaintiff had to plead guilty to a charge so he could transfer to the South Carolina Department of Corrections ("SCDC") (*id*. at 12, 13, 14).

The plaintiff also alleges that the defendants retaliated against him (*id*. at 7, 9, 14). He contends that on June 29, 2023, he reported that the wrong type of food trays was being used for mental health detainees (*id*. at 26). Ofc. Tollison then retaliated against the plaintiff by giving him a tray that had onions on it despite the plaintiff's "no onions" diet (*id*. at 9, 26–27). The plaintiff contends that he was then removed from the "no onion" diet as retaliation (*id*. at 27). He was also prevented from talking to other detainees (*id*. at 29).

The plaintiff filed documents on June 16, 2023, seeking to bring criminal charges against a local magistrate, Lt. Maddox, Lt. Reid, and Sheriff Deputy Payton (*id*. at 26). The plaintiff contends that on July 1, 2023, Lt. Smith and Ofc. Johnson mocked and ridiculed the plaintiff by looking at his confidential legal mail (*id*. at 27). He also seeks

supervisory liability against Sheriff Reynolds, Capt. Lawson, Ms. Bishop, Lt. Reid, Ofc. Tollison, Lt. Miller, and Lt. Humphries (*id*. at 7–10).

The plaintiff's injuries include damage and blindness due to untreated syphilis, that he had to go to the hospital for treatment, and was diagnosed with ulcerative colitis (*id*. at 12, 13, 14, 31).  For relief, the plaintiff seeks an order requiring the Detention Center to provide medical treatment for other detainees and money damages (*id*. at 31).

## <u>STANDARD OF REVIEW</u>

The plaintiff filed this action pursuant to 28 U.S.C. § 1915, the *in forma pauperis* statute.  This statute authorizes the District Court to dismiss a case if it is satisfied that the action "fails to state a claim on which relief may be granted," is "frivolous or malicious," or "seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2)(B).  Further, the plaintiff is a prisoner under the definition of 28 U.S.C. § 1915A(c), and "seeks redress from a governmental entity or officer or employee of a governmental entity." 28 U.S.C. § 1915A(a).  Thus, even if the plaintiff had prepaid the full filing fee, this Court is charged with screening the plaintiff's lawsuit to identify cognizable claims or to dismiss the complaint if (1) it is frivolous, malicious, or fails to state a claim upon which relief may be granted, or (2) seeks monetary relief from a defendant who is immune from such relief.  28 U.S.C. § 1915A.

As a *pro se* litigant, the plaintiff's pleadings are accorded liberal construction and held to a less stringent standard than formal pleadings drafted by attorneys.  *See Erickson v. Pardus*, 551 U.S. 89 (2007) (*per curiam*).  The requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleading to allege facts which set forth a claim cognizable in a federal district court.  *See Weller v. Dep't of Soc. Servs.*, 901 F.2d 387, 391 (4th Cir. 1990).

This complaint is filed pursuant to 42 U.S.C. § 1983, which "'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights

6

elsewhere conferred.'" *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)).  A civil action under § 1983 "creates a private right of action to vindicate violations of 'rights, privileges, or immunities secured by the Constitution and laws' of the United States." *Rehberg v. Paulk*, 566 U.S. 356, 361 (2012).  To state a claim under § 1983, a plaintiff must allege two essential elements: (1) that a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988).

## DISCUSSION

As noted above, the plaintiff filed the instant action pursuant to § 1983, seeking damages from the defendants.  Additionally, as indicated, the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds is sufficient to survive screening, and service will be recommended as to these defendants on that claim.  The remainder of the plaintiff's claims (and defendants), as outlined below, are subject to summary dismissal.

As an initial matter, to the extent the plaintiff purports to seek an order from this court requiring medical care be provided for other detainees at the Detention Center, his request is subject to dismissal because a prisoner cannot file or maintain a lawsuit on behalf of others.  *See Hummer v. Dalton*, 657 F.2d 621, 625–26 (4th Cir. 1981) (a prisoner cannot act as a "knight-errant" for others); *Oxendine v. Williams*, 509 F.2d 1405, 1407 (4th Cir. 1975) ("it is plain error to permit [an] imprisoned litigant who is unassisted by counsel to represent his fellow inmates in a class action.").  As such, the only claims being considered in this action are the plaintiff's claims (even those that have survived screening) – not those of other detainees.

***Heck v. Humphrey***

To the extent the plaintiff seeks money damages in this action based upon being "forced" to plead guilty to charges in the Laurens County General Sessions Court so he could transfer to SCDC custody (doc. 9 at 12, 13, 14), his claims are barred by *Heck*. In *Heck*, the United States Supreme Court held that in order to recover damages for imprisonment in violation of the Constitution, the imprisonment must first be successfully challenged. The Court stated:

> We hold that, in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, . . . a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus, 28 U.S.C. § 2254. A claim for damages bearing that relationship to a conviction or sentence that has *not* been so invalidated is not cognizable under § 1983.

*Id*. at 486–87 (footnote omitted); *see also Edwards v. Balisock*, 520 U.S. 641 (1997) (the preclusive rule of *Heck* extended to § 1983 claims challenging procedural deficiencies which necessarily imply the invalidity of the judgment). This is known as the "favorable termination" requirement. *See Wilson v. Johnson*, 535 F.3d 262, 263 (4th Cir. 2008). Judicially-noticed, publicly-available online records for the Laurens County General Sessions Court indicate that the plaintiff pled guilty on July 10, 2023, to grand larceny, possession of a stolen vehicle, and unlawful carry of a pistol (in exchange for the dismissal of charges for unlawful possession of a stolen pistol, unlawful possession of a firearm or ammunition, and possession of marijuana).[1] *See* Laurens County Public Index https://publicindex.sccourts.org/Laurens/PublicIndex/PISearch.aspx (enter the plaintiff's

---

[1] *Phillips v. Pitt Cnty. Mem. Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) (courts "may properly take judicial notice of matters of public record."); *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989) ("We note that '[t]he most frequent use of judicial notice . . . is in noticing the content of court records.'").

8

name and 2022A3010101304, 2023A3010100193, 2023A3010100194, 2023A3010100195, 2023A3010100196, 2023A3010100197) (last visited November 15, 2023).  The plaintiff's convictions do not indicate a favorable termination.  As such, the plaintiff's claims relating to his convictions are barred by *Heck* at this time, because he has not received a favorable termination.

**Conditions of Confinement Claims**

The plaintiff's claims that he was denied free contact solution, his food was drugged, he was placed in a cell with no sink for 8 days, he had limited shower and visitation privileges, had limited daily recreation, did not have enough toilet paper, did not have enough hygiene products, was denied access to the grievance process, and seeking to bring criminal charges against some of the defendants (doc. 9 at 7–9, 12, 17, 18–19, 21–22, 24, 25–28), liberally construed, appears to assert that he was subject to unconstitutional conditions of confinement.  The plaintiff is a pretrial detainee; thus, his claims are evaluated under the Fourteenth Amendment rather than the Eighth Amendment (which is used to evaluate conditions of confinement claims for individuals convicted of crimes).  *See City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243–44 (1983).  In any event, "[the] due process rights of a pretrial detainee are at least as great as the [E]ighth [A]mendment protections available to the convicted prisoner." *Martin v. Gentile*, 849 F.2d 863, 870 (4th Cir. 1988).  To state a claim that conditions of confinement violate constitutional requirements, a plaintiff must show that he was deprived of a basic human need and that prison officials were deliberately indifferent to that deprivation.  *Strickler v. Waters*, 989 F.2d 1375, 1379 (4th Cir. 1993). The first prong of the *Strickler* analysis requires an objective showing that the deprivation was sufficiently serious, such that significant physical or emotional injury resulted from it, while the second prong is a subjective test requiring evidence that prison officials acted with a sufficiently culpable state of mind.  *Id.* (citing and partially quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

First, the plaintiff has no standing to seek criminal charges against Lt. Maddox, Lt. Reid, or Deputy Sheriff Payton because private citizens lack a judicially cognizable interest in the prosecution or non-prosecution of another. *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973). Further, to the extent the plaintiff seeks damages for allegedly improperly denied grievances, his claims are subject to dismissal because it is well-settled that an inmate's access to and participation in a prison's grievance process is not constitutionally protected. *See Taylor v. Lang*, 483 F. App'x 855, 858 (4th Cir. 2012); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994). Additionally, the plaintiff's claim that his food has been drugged because his medical test results improved is subject to dismissal as frivolous because it is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. *Harley v. United States*, 349 F. Supp. 2d 980, 981 (M.D.N.C. 2004) (citing *Neitzke v. Williams*, 490 U.S. 319 (1989)); *see Feurtado v. McNair*, No. 3:05-cv-1933-SB, 2006 WL 1663792, at *2 (D.S.C. Jun. 15, 2006) (noting that frivolousness encompasses inarguable legal conclusions and fanciful factual allegations), *aff'd*, 227 F. App'x 303 (4th Cir. 2007), *petition for cert. dismissed*, 553 U.S. 1029 (2008).

Additionally, the remainder of the plaintiff's complained-of conditions (being denied free contact solution, limited visitation and shower privileges, limited recreation, held in a cell with no sink for 8 days, denied free copies, not provided enough toilet paper sometimes, and only provided indigent inmate hygiene products), do not rise to the level of a constitutional violation. *See Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995) (quoting *Wilson*, 501 U.S. at 298) (noting that the Constitution does not mandate comfortable prisons, and only deprivations which deny the minimal civilized measure of life's necessities are sufficiently grave to provide the basis of a § 1983 claim); *Thompson v. Brown*, C/A No. 3:11-cv-318-TMC-JRM, 2011 WL 6012592, at *1–2 (D.S.C. Nov. 8, 2011) (rejecting conditions of confinement claim where the plaintiff claimed "his mattress and blanket were confiscated for six days, he was not allowed to have any toilet tissue for six days, his

clothes were taken away from him for six days, his cell was cold, he had no running water in his cell, and he was forced to sleep on a steel cot for six days"), *Report and Recommendation adopted by* 2011 WL 6012550 (D.S.C. Dec. 2, 2011).  For example, the plaintiff's vague and conclusory allegations regarding his denial of appropriate hygiene included that he could only shower during his recreation time, that Ofc. Brown did not provide a clean showering area (with no further information), and that he was only provided a shave and haircut if he had a court appearance (doc. 9 at 9, 27–28).  However, the "fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'"  *Bell v. Wolfish*, 441 U.S. 520, 537 (1979).  Further, the plaintiff is not constitutionally entitled to visitation privileges.  *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 461 (1989) (finding no liberty interest in canteen, telephone, or visitation privileges).  Lastly, in seeking an order from this court seeking to have unspecified "procedural safeguards" put in place at the Detention Center to provide detainees access to contract tracing and testing for communicable diseases (doc. 9 at 31), the plaintiff seeks relief this court cannot grant because "federal courts do not sit to supervise state prisons."  *See Meachum v. Fano*, 427 U.S. 215, 228–29 (1976).  As such, the plaintiff's condition of confinement claims are subject to summary dismissal.

**ADA Claim**

The plaintiff also purports to seek damages from the defendants under the ADA because he does not have the same privileges as non-indigent inmates or inmates in general population (doc. 9 at 18–19). To state a claim under Title II of the ADA, the plaintiff must allege facts from which it may be inferred that (1) he is a qualified individual with a disability; (2) he was excluded from participation in, or denied the benefits of, the services, programs, or activities of, or otherwise discriminated against, by a public entity; and (3) the

discrimination, exclusion, or denial of benefits was because of his disability.  *See Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 498 (4th Cir. 2005).  Here, the plaintiff has not alleged a disability because neither being a detainee nor being indigent meet the definition of disability under the ADA.  *See Ross v. Virginia*, C/A No. 7:22-cv-00179, 2022 WL 1913438, at *2 (W.D. Va. June 3, 2022) (collecting cases recognizing that neither incarceration nor being indigent are disabilities under the ADA), *aff'd* 2022 WL 12325033 (4th Cir. 2022), *cert. denied* 143 S.Ct. 1032 (2023).  As such, to the extent the plaintiff seeks damages under the ADA, his claims are subject to summary dismissal.

**Equal Protection Claim**

The plaintiff also alleges equal protection claims because another detainee was allowed out of disciplinary detention before the plaintiff (doc. 9 at 25) and because SCDC inmates at the Detention Center could get more frequent shaves and haircuts than detainees (*id*. at 28).  The Equal Protection Clause of the Fourteenth Amendment provides that "[n]o State shall . . . deny to any person within its jurisdiction the equal protection of the laws."  U.S. Const. amend. XIV, § 1.  The Fourth Circuit has held that

> [t]o succeed on an equal protection claim, a plaintiff must first demonstrate that he has been treated differently from others with whom he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination.  Once this showing is made, the court proceeds to determine whether the disparity in treatment can be justified under the requisite level of scrutiny.

*Morrison v. Garraghty*, 239 F.3d 648, 654 (4th Cir. 2001) (internal citations omitted).  First, the plaintiff's equal protection claims fail because he has not alleged that he has been treated differently than other inmates based upon a suspect class – as being a prisoner is not a suspect classification.  *See Wilkins v. Gaddy*, 734 F.3d 344, 348 (4th Cir. 2013) (noting that circuit precedent clearly holds "that prisoners are not a 'suspect class'").  Further, the plaintiff has not alleged that he was similarly situated to the other detainee

because the plaintiff concedes that his charge and the other detainee's charges were different (*see* doc. 9 at 25 (noting that the other detainee's charge was sexual harassment and that the plaintiff's charge was the use of profanity)).  The plaintiff was likewise not similarly situated to convicted SCDC prisoners for purposes of an equal protection claim.  As such, the plaintiff's equal protection claim is subject to summary dismissal.

**Due Process Claim**

The plaintiff alleges that his Fourteenth Amendment rights were violated by the defendants because he was found guilty of a disciplinary charge of using profanity and sentenced to time in disciplinary detention (doc. 9 at 24–25).  To state a procedural due process violation, a plaintiff must (1) identify a protected liberty or property interest and (2) demonstrate deprivation of that interest without due process.  *See Prieto v. Clarke*, 780 F.3d 245, 248 (4th Cir. 2015).  The plaintiff's claim fails for multiple reasons.  First, the plaintiff has not alleged a protected liberty interest in being sentenced to disciplinary detention as a result of his disciplinary charge.  *Hewitt v. Helms*, 459 U.S. 460, 468 (1983) (finding no constitutional right under the due process clause to a particular security classification or prison placement), *overruled in part on other grounds by Sandin v. Conner*, 515 U.S. 472 (1995).  Indeed, as noted by the Supreme Court, a change in a prisoner's conditions of confinement only gives rise to a federally-protected liberty interest if it "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  *Sandin*, 515 U.S. at 483, 485 (finding no liberty interest when inmate placed in segregated confinement).  Here, the plaintiff's complaint does not allege a plausible atypical or significant hardship in being placed in disciplinary detention.  As such, the plaintiff's due process claim is subject to summary dismissal.

13

**Failure to Protect Claim**

The plaintiff alleges that the defendants violated his rights by failing to protect him from sexual harassment by another detainee in May 2023 (doc. 9 at 7, 8, 10, 12, 19–20). To plausibly state a failure to protect claim under the Eighth Amendment, a plaintiff must allege sufficient factual allegations to show that a prison official had actual knowledge of a substantial risk of harm to an inmate and disregarded that substantial risk. *Farmer v. Brennan*, 511 U.S. 825, 847 (1994); *see also Parrish v. Cleveland*, 372 F.3d 294, 302 (4th Cir. 2004) (stating the standard of deliberate indifference requires actual knowledge and disregard of a substantial risk of serious injury). The protections afforded prisoners under the Eighth Amendment extend to pretrial detainees through the Due Process Clause of the Fourteenth Amendment. *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (internal citation omitted). Here, the plaintiff's claim fails because the plaintiff contends that after the first sexual harassment incident he filed a report with Ofc. Teeter, but does not allege that the other defendants were on notice of the alleged incident or report or that Ofc. Teeter failed to protect him from future harassing incidents (doc. 9 at 19–20). Further, harassment and antagonization by other prisoners does not amount to a constitutional injury that is sufficiently serious to form the basis of a § 1983 failure to protect claim. *See Brown v. Lawhorne*, C/A No. RDB-14-1885, 2015 WL 3464141, at *4 (D. Md. May 28, 2015) (holding that "[v]erbal harassment and aggravating language, without more, do not amount to a constitutional violation). Further, the plaintiff concedes that the other detainee was placed on disciplinary detention for harassing the plaintiff (doc. 9 at 25), so he has not alleged that the defendants failed to act in response to the harassment of the plaintiff. As such, the plaintiff's failure to protect claim is also subject to summary dismissal.

**Retaliation Claims**

The plaintiff's various allegations of retaliation also fail to state a claim for relief. Where a plaintiff alleges that an act was taken in response to the exercise of a

14

constitutionally protected First Amendment right, the plaintiff must allege that (1) he engaged in "protected First Amendment activity, (2) [the defendant] took some action that adversely affected [his] First Amendment rights, and (3) there was a causal relationship between [his] protected activity and [the defendant's] conduct." *Martin v. Duffy*, 858 F.3d 239, 249 (4th Cir. 2017) (quoting *Constantine v. Rectors & Visitors of George Mason Univ.*, 411 F.3d 474, 499 (4th Cir. 2005)). Because conduct that "tends to chill the exercise of constitutional rights might not itself deprive such rights," a plaintiff can plausibly allege a retaliation claim without alleging an actual deprivation of his First Amendment rights. *Constantine*, 411 F.3d at 500. With respect to causation, a plaintiff must plausibly allege knowledge by the defendant of a plaintiff's protected activity as well as that the retaliation took place within some "temporal proximity" of that activity. *Id.* at 501; *see Germain v. Bishop*, C/A No. TDC-15-1421, 2018 WL 1453336, at *14 (D. Md. Mar. 23, 2018). A prisoner must present more than conclusory accusations of retaliation, and must provide facts that show the exercise of his constitutional right was a substantial factor motivating the retaliation. *See e.g.*, *Adams v. Rice*, 40 F.3d 72, 74–75 (4th Cir. 1994), *cert. denied*, 514 U.S. 1022 (1995); *Cochran v. Morris*, 73 F.3d 1310, 1318 (4th Cir. 1996).

Here, the majority of the plaintiff's allegations regarding retaliation are vague and conclusory, only alleging that various defendants retaliated against him for engaging in protected conduct, including unspecified defendants as well as Nurse Julie, Capt. Lawson, Lt. Reid, Lt. Maddox (doc. 9 at 7, 8, 9, 10, 18, 26). However, the plausibility standard requires more than "'an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Griffith v. State Farm Fire and Cas. Co.*, C/A No. 2:12-cv-00239-DCN, 2012 WL 2048200, at *1 (D.S.C. June 6, 2012) (quoting *Iqbal*, 556 U.S. at 678). Although the plaintiff's allegations must be liberally construed, the plaintiff must provide more than general and conclusory statements to allege a plausible claim for relief. *Adams*, 40 F.3d at 74–75; *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that liability under § 1983

"requires personal involvement"). Moreover, as recently reiterated by the Fourth Circuit, general, conclusory, and collective allegations against groups of defendants fail to allege a plausible claim. *See Langford v. Joyner*, 62 F.4th 122, 124–25 (4th Cir. 2023) (recognizing that the plaintiff's complaint failed to meet the plausibility standard when it did not set forth who the defendants were beyond being employees where he was incarcerated or in what capacity the defendants interacted with the plaintiff). Nevertheless, the undersigned will address two alleged retaliation claims for which the plaintiff has provided specific allegations.

The first retaliation claim specifically alleged is that the plaintiff was removed from his "no onion" diet by medical personnel after he reported to Capt. Lawson that the wrong food trays were being used for mental health detainees (doc. 9 at 26–27). The plaintiff contends that after he complained, Ofc. Tollison retaliated by delivering a food tray to the plaintiff with onions and indicated that he was no longer on a no onion diet (*id*.). The plaintiff's retaliation claim fails for multiple reasons. First, there is no indication that Ofc. Tollison was aware of the plaintiff's complaint to Capt. Lawson or that the plaintiff should have a no onion tray. Further, the plaintiff concedes that medical staff made the determination that he no longer needed a no onion diet, further undermining his claim that Ofc. Tollison retaliated against him by providing a tray with onions. Moreover, even presuming the plaintiff's retaliation claim was based on the medical staff's determination that he no longer required a no onion diet, the plaintiff has not alleged that they were aware of his complaint to Capt. Lawson and his allegations of causation are conclusory at best. As such, the plaintiff's retaliation claim regarding his no onion diet is subject to summary dismissal.

The plaintiff also alleges that after he filed the instant matter he was informed that he could not obtain any more free legal copies (doc. 9 at 29). The plaintiff has not, however, provided plausible factual allegations regarding this retaliation claim. For

example, there is a passing reference to Lt. Smith, but no indication that Lt. Smith was aware of the plaintiff's case in this court or any temporal proximity between the plaintiff's filing of a complaint in this court and Lt. Smith's actions. Moreover, when this action was filed, the plaintiff had already been transferred into SCDC custody (*see* doc. 1-3 (letter received with the plaintiff's complaint noting that his address was Kirkland Correctional Institution)), which undermines his assertion that he was denied legal copies by the defendants at the Detention Center in retaliation for filing this action. As such, the plaintiff's various retaliation claims are also subject to dismissal.

**Access to the Courts Claims**

The plaintiff's denial of access to the courts claims – that he was not provided enough blank paper to submit an emergency restraining order request, could not turn in legal paperwork to Detention Center staff, and was not provided copies at no charge (doc. 9 at 9, 12, 13, 29) – are also subject to summary dismissal. As an initial matter, pretrial detainees, temporarily held in a county facility while awaiting trial, do not have a constitutional right to a law library, as the Constitution guarantees a right to reasonable access to the courts, not to legal research or a law library. *See Lewis v. Casey*, 518 U.S. 343, 351 (1996). Additionally, a claim for denial of access to the courts must be pled with specificity. *Cochran v. Morris*, 73 F.3d 1310, 1317 (4th Cir. 1996). Further, in order to state a constitutional claim for denial of access to the courts, a prisoner must show actual injury. *Id.*; *see Lewis*, 518 U.S. at 349. The actual injury requirement can be satisfied by demonstrating that a non-frivolous legal claim was frustrated or impeded by some actual deprivation of access to the court. *Lewis*, 518 U.S. at 352–53. Here, the plaintiff's conclusory allegations that he was denied free copies of documents or the ability to file a restraining order against Detention Center staff, even liberally construed, fails to "demonstrate" actual injury or state a claim for relief. Indeed, the plaintiff's alleged injuries all include medical conditions he asserts were caused by inadequate medical care, *not* that

17

a non-frivolous legal claim was impeded or frustrated.  As such, the plaintiff's denial of access to the courts claims are subject to summary dismissal.

**Mail Interference Claim**

The plaintiff's mail interference claim – that Lt. Smith and Ofc. Johnson read one piece of his legal mail (doc. 9 at 27) – is also subject to summary dismissal.  Inmates enjoy a First Amendment right to send and receive mail.  *Thornburgh v. Abbott*, 490 U.S. 401, 407 (1989).  As such, interference with an inmate's mail may state a cognizable claim under § 1983.  *Id.*; *see Corey v. Reich*, C/A No. 0:02-2801-12, 2004 WL 3090234, at *10 (D.S.C. Mar. 9, 2004) (internal citation omitted).  Nevertheless, the Supreme Court has recognized that prisoners only retain First Amendment rights not "inconsistent with [their] status as . . . prisoner[s] or with the legitimate penological objectives of the corrections system."  *Hudson v. Palmer*, 468 U.S. 517, 523 (1984) (alteration in original) (internal citation and quotation marks omitted).  Here, the plaintiff's claim fail because he has not alleged that his mail was destroyed by Lt. Smith or Ofc. Johnson or that he suffered injury when the one piece of legal mail was opened.  Moreover, an occasional, negligent delay or interference with personal (or legal) mail, without more, does not impose a deprivation of Constitutional proportions.  *See Pink v. Lester*, 52 F.3d 73, 75 (4th Cir. 1995); *Pearson v. Simms*, 345 F. Supp. 2d 515, 519 (D. Md. 2003), *aff'd* 88 F. App'x 639 (4th Cir. 2004).  Further, even presuming this incident caused embarrassment for the plaintiff, there is no federal constitutional right to be free from emotional distress, mental anguish, or psychological stress.  *See Williams v. Pruitt*, C/A No. 8:13-cv-01812-JMC, 2013 WL 4500436, at *2 n.2 (D.S.C. Aug. 19, 2013) (citing *Grandstaff v. City of Borger, Tex.*, 767 F.2d 161 (5th Cir. 1985), *cert denied*, 480 U.S. 916 (1987); *Rodriguez v. Comas*, 888 F.2d 899, 903 (1st Cir. 1989)).  As such, the plaintiff's mail interference claim is also subject to summary dismissal.

**Verbal Abuse Claim**

The plaintiff claims that Lt. Smith and Ofc. Johnson violated his rights by mocking and ridiculing him (doc. 9 at 27). A prisoner's exposure to verbal abuse or profanity does not rise to the level of a constitutional violation. *Morrison v. Martin*, 755 F. Supp. 683, 687 (E.D.N.C. 1990), *aff'd* 917 F.2nd 1302 (4th Cir. 1990) (finding that subjection of a prisoner to verbal abuse or profanity does not rise to the level of a constitutional violation). As such, the plaintiff's claim regarding verbal abuse is subject to summary dismissal.

**HIPAA Claim**

The plaintiff alleges that his rights under 42 U.S.C. § 1320, HIPAA, were violated because his medical condition was shared with other detainees and staff members (doc. 9 at 7, 12, 16). HIPAA governs the confidentiality of medical records and regulates under what circumstances "covered entities" may use or disclose an individuals protected health information. However, there is no private right of action under HIPAA; instead, enforcement proceedings where civil or criminal penalties may be imposed can only be initiated by the Secretary of Health and Human Services (or authorized state authorities). *See Winfree v. S. Cent. Reg'l Jail, et al*., C/A No. 2:16-cv-06332, 2018 WL 737429, at *3 n.1 (S.D. W. Va. Jan. 16, 2018), *Report and Recommendation adopted by* 2018 WL 736045 (S.D. W. Va. Feb. 6, 2018) (citing *Logan v. Dep't of Veterans Affs.*, 357 F. Supp. 2d 149, 155 (D.D.C. 2004); 42 U.S.C. §§ 1320d-d-8 and 300gg-22). As such, the plaintiff's HIPAA claim is also subject to summary dismissal.

**Deliberate Indifference to Medical Needs**

The plaintiff also alleges that he has been denied appropriate medical care (*see* doc. 9). As indicated above, the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds is sufficient to survive screening, and service will be recommended as to these

19

defendants on that claim. However, the plaintiff's remaining medical indifference claims are subject to dismissal. The standard for reviewing medical claims of pretrial detainees under the Fourteenth Amendment is essentially the same as that for a convicted prisoner under the Eighth Amendment—deliberate indifference to serious medical needs. *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). Not "every claim by a prisoner [alleging] that he has not received adequate medical treatment states a violation of the [Constitution]." *Estelle v. Gamble*, 429 U.S. 97, 105 (1976). The government is required to provide medical care for incarcerated individuals. *Id*. at 103. However, to establish deliberate indifference, the treatment "must be so grossly incompetent, inadequate or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Miltier v. Beorn*, 896 F.2d 848, 851–52 (4th Cir. 1990), *overruled in part on other grounds by Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

In order to state a claim, a plaintiff must show a serious medical need as well as that the defendant "knowingly disregarded that need and the substantial risk it posed." *DePaola v. Clarke*, 884 F.3d 481, 486 (4th Cir. 2018) (citing *King v. Rubenstein*, 825 F.3d 206, 218–20 (4th Cir. 2016); *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–11 (4th Cir. 2017)). A "serious medical need" is a condition "diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Heyer*, 849 F.3d at 210 (citation omitted). "Deliberate indifference may be demonstrated by either actual intent or reckless disregard. A defendant acts recklessly by disregarding a substantial risk of danger that is either known to the defendant or which would be apparent to a reasonable person in the defendant's position." *Miltier*, 896 F.2d at 851–52 (citation omitted). "It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Estelle*, 429 U.S. at 106. Mere negligence or malpractice does not violate the Eighth Amendment. *Id*. Moreover, disagreements between an inmate and a physician over the inmate's proper

20

medical care do not state a Section 1983 claim unless exceptional circumstances are alleged. *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir.1985).

As noted, the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds are being recommended for service. However, the plaintiff's complaint also alleges medical indifference against Capt. Lawson, Ms. Bishop, Ofc. Tollison, Lt. Reid, Ofc. Brown, Lt. Humphries, Lt. Maddox, Lt. Miller, Nurse Billie, and Nurse John Doe (doc. 9 at 8, 9, 10). However, the plaintiff's complaints of medical indifference against these defendants (other than Nurse Billie and Nurse John Doe) are vague and conclusory in nature, asserting almost verbatim for each defendant: failed to respond "to medical condition any layman can see would warrant attention" (*id.*). As noted above, although the plaintiff's allegations must be liberally construed, the plaintiff must provide more than general and conclusory statements to allege a plausible claim for relief. *Adams*, 40 F.3d at 74–75; *see Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) (noting that liability under § 1983 "requires personal involvement"). Indeed, the plaintiff's amended complaint contains no allegations regarding the alleged incidents whereby these defendants were informed of a serious medical need and failed to obtain or provide medical treatment for the plaintiff (*see* doc. 9).

Further, the plaintiff's allegations regarding Nurse Billie and Nurse John Doe likewise fail to state a claim for relief. The plaintiff contends that these two defendants had a bad attitude when obtaining blood from the plaintiff, refused to do all of the tests requested by the plaintiff, and delayed notifying the plaintiff of the results of the testing (doc. 9 at 9, 10, 21). However, the plaintiff is not constitutionally entitled to the treatment of his choice. *See Sharpe v. S.C. Dep't of Corrs.*, 621 F. App'x 732, 733 (4th Cir. 2015) (unpublished per curiam opinion) (noting that "mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief" under § 1983 (citing *Russell v. Sheffer*, 528 F.2d 318, 319 (4th Cir. 1975))). Further, as noted

above, rude behavior or verbal insults do not rise to the level of a constitutional violation. *Morrison*, 755 F. Supp. at 687. As such, the plaintiff's medical indifference claim, other than the medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds, is subject to summary dismissal.

**Supervisory Liability**

The plaintiff specifically seeks supervisory liability against defendants Sheriff Reynolds, Capt. Lawson, Ms. Bishop, Lt. Reid, Ofc. Tollison, Lt. Miller, and Lt. Humphries (doc. 9 at 7–10).[2] However, the plaintiff cannot seek supervisory liability against these defendants because the doctrines of vicarious liability and *respondeat superior* are generally not applicable to § 1983 suits. *Iqbal*, 556 U.S. at 676 ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Polk Cnty. v. Dodson*, 454 U.S. 312, 325 (1981) (noting that "Section 1983 will not support a claim based on a *respondeat superior* theory of liability" (emphasis in original)). Indeed, to allege a plausible claim requires a showing that the supervisor (1) had actual or constructive knowledge that his/her subordinates engaged in conduct posing a pervasive or unreasonable risk of constitutional injury; (2) the supervisor's response to the knowledge was "so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices;" and (3) an affirmative causal link between the inaction by the supervisor and the particular constitutional injury suffered by the plaintiff. *Green v. Beck*, 539 F. App'x 78, 80 (4th Cir. 2013). Instead, the claims against these defendants in the plaintiff's complaint all involve their individual acts – which have been addressed, *supra*. Further, as noted above, to the extent the plaintiff asserts supervisory liability claims against the defendants based on allegedly improperly denied grievances, the plaintiff is not

---

[2] Of note, as recognized above, the plaintiff's medical indifference claim against Sheriff Reynolds is sufficient to survive service; however, the plaintiff has not stated a supervisory liability claim against Sheriff Reynolds.

constitutionally entitled to access the grievance process. *Taylor*, 483 F. App'x at 858; *Adams*, 40 F.3d at 75. As such, the plaintiff's complaint fails to state a supervisory liability claim against the defendants. *See Ford v. Stirling*, C.A. No. 2:17-02390-MGL, 2017 WL 4803648, at \*2 (D.S.C. Oct. 25, 2017); *London v. Maier*, C.A. No. 0:10-00434-RBH, 2010 WL 1428832, at \*2 (D.S.C. Apr. 7, 2010).

## RECOMMENDATION

As noted above, this case will go forward with respect to the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds. However, with respect to the plaintiff's remaining claims, the undersigned is of the opinion that the plaintiff cannot cure the defects identified above by amending the amended complaint. Therefore, the undersigned recommends that the district court dismiss the remaining claims and defendants (other than the medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds) *with prejudice*, without leave to amend, and without issuance and service of process. *See Britt v. DeJoy*, 45 F.4th 790, 791 (4th Cir. 2022) (published) (noting that "when a district court dismisses a complaint or all claims without providing leave to amend . . . the order dismissing the complaint is final and appealable"). **The attention of the parties is directed to the important notice on the following page**.

**IT IS SO RECOMMENDED**.

s/Kevin F. McDonald
United States Magistrate Judge

November 16, 2023
Greenville, South Carolina

23

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.  "[I]n the absence of a timely filed objection, a district court need not conduct a *de novo* review, but instead must only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation." *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committees note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d).  Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Room 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).