IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Matthew Robert Budney, ) | |
| ) | Civil Action No. 6:23-cv-3514-JD-KFM |
| Plaintiff, ) | |
| ) | |
| vs. ) | **REPORT OF MAGISTRATE JUDGE** |
| ) | |
| Nurse Julie, Nurse Ashley, ) | |
| Sheriff Reynolds, Kim Little, ) | |
| Savannah Wall, and Nurse Grant, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

This matter is before the court on the defendants' motions for summary judgment (docs. 127, 131, 147) and the plaintiff's motions for summary judgment (docs. 186, 219). The plaintiff, who is proceeding *pro se* and *in forma pauperis*, was a pretrial detainee in the Laurens County Detention Center at the time of the events alleged in his complaint and amended complaint. He seeks relief in this action pursuant to 42 U.S.C. § 1983. Pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d)(D.S.C.), this magistrate judge is authorized to review all pretrial matters in cases filed under Section 1983 and submit findings and recommendations to the district court.

**BACKGROUND**

As noted, the allegations in the plaintiff's complaint and amended complaint regard incidents that occurred while he was a pretrial detainee in the Laurens County Detention Center ("LCDC") (docs. 1, 9).[1] On November 16, 2023, the undersigned

---

[1] After the filing of his complaint, the plaintiff was transferred to the custody of the South Carolina Department of Corrections ("SCDC") (docs. 1-3, 31, 87). The plaintiff contacted the Clerk of Court by telephone on June 24, 2024, and stated that he had been

recommended that the district judge allow this case to go forward with respect to the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds and further recommended that the district judge dismiss the remaining claims and defendants (doc. 34). The plaintiff filed his objections to that recommendation on January 11, 2024 (doc. 54).

Defendants Nurse Ashley, Nurse Grant, Nurse Julie, and Kim Little filed a motion for summary judgment on February 19, 2024 (doc. 127). By order filed on February 20, 2024, pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), the plaintiff was advised of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately to the defendants' motion (doc. 125). The plaintiff filed his response in opposition on March 8, 2024 (doc. 141), and the defendants filed a reply on March 14, 2024 (doc. 144). On April 24, 2024, the plaintiff filed a sur-reply (doc. 170).

On February 26, 2024, defendant Savannah Wall filed a motion for summary judgment (doc. 131), and, on that same date, another *Roseboro* order was issued, again advising the plaintiff of the motion for summary judgment procedure and the possible consequences if he failed to respond adequately to defendant Wall's motion (doc. 132). The plaintiff filed his response in opposition to defendant Wall's motion on April 8, 2024 (doc. 156).

On March 20, 2024, defendants Officer Brown, Lieutenant Humphries, Captain Lawson, Lieutenant Maddox, Lieutenant Miller, Sheriff Deputy Payton, Lieutenant Reid, and Sheriff Reynolds filed a motion for summary judgment (doc. 147). On March 21,

---

released from prison and had no place to live (doc. 227). On several occasions throughout this case, the plaintiff has been directed that he must keep the Clerk of Court advised in writing of any change in his address and that if he fails to meet a deadline set by the court due to his failure to do so, his case may be dismissed for violating the order (docs. 6, 14, 21). As of the date of the filing of this recommendation, the plaintiff has not advised the Clerk of Court of any change to his address from his last place of incarceration in the SCDC.

2024, a *Roseboro* order was issued, advising the plaintiff of the consequences if he failed to respond to the motion (doc. 148). The plaintiff filed responses in opposition to the motion on April 25 and May 6, 2024 (docs. 172, 187), and the defendants filed replies to the plaintiff's responses on May 2 and 13, 2024 (docs. 174, 194).

The plaintiff filed motions for summary judgment on May 6 and June 5, 2024 (docs. 186, 219) to which the defendants filed responses in opposition (docs. 195, 197, 198, 223, 224, 225). The plaintiff filed a reply in support of his first motion for summary judgment on June 5, 2024 (doc. 217). In addition, the plaintiff has filed numerous nondispositive motions in this case (*see* docs. 64, 70, 71, 73, 140, 153, 158, 159, 160), to which the defendants have filed responses in opposition.

On May 3, 2024, the Honorable Joseph Dawson, III, United States District Judge, adopted the undersigned's recommendation and ordered that the plaintiff's amended complaint was dismissed as to all claims and defendants other than the medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds with prejudice, without leave to amend, and without issuance and service of process (doc. 178; *see* doc. 34). Accordingly, defendants Captain Lawson, Hanna Bishop, Lieutenant Reid, Officer Tollison, Nurse Billie, Officer Brown, Sheriff Deputy Payton, Lieutenant Maddox, Lieutenant Miller, Lieutenant Humphries, and John Doe were dismissed from the case.[2]

---

[2] The motion for summary judgment filed on March 20, 2024, is moot to the extent it is filed on behalf of dismissed defendants Captain Lawson, Lieutenant Reid, Officer Brown, Sheriff Deputy Payton, Lieutenant Maddox, Lieutenant Miller, and Lieutenant Humphries (doc. 147). The motion will be considered to the extent it pertains to remaining defendant Sheriff Reynolds.

Based upon the foregoing, the motions now before the court are ripe for consideration.[3]

## **FACTS PRESENTED**

As noted above, only the plaintiff's medical indifference claim against defendants Nurse Julie, Nurse Ashley, Nurse Grant, Kim Little, Savannah Wall, and Sheriff Reynolds remains for consideration (*see* doc. 178). In his amended complaint, the plaintiff alleges that he had syphilis when he was arrested and incarcerated in the LCDC (doc. 9 at 16). He requested medical treatment and contact tracing, but his requests were denied (*id*. at 16, 30). Nurse Ashley (Cool) ("Nurse Cool") examined the plaintiff a few days later (*id*. at 16). When Nurse Julie (Springer) ("Nurse Springer"), Nurse Cool, and Ofc. Teeter came to the plaintiff's cell later that same day, Nurse Springer would not do testing, contact tracing, or further treat the plaintiff's condition (*id*.). The plaintiff claims that he was charged a fee for medical treatment when he requested the contact tracing and treatment, although he did not receive appropriate treatment (*id*. at 16-17). Because the plaintiff did not have money to pay for contact solution, he developed an infection in his eye and had to stop wearing his contacts (*id*. at 17). The plaintiff alleges that he was sexually harassed by another inmate on May 22, 2023, and afterwards he requested mental health treatment, but he was charged a fee for the mental health sessions, and Nurse Springer interrupted them (*id*. at 7, 20). On June 21, 2023, the plaintiff attended a mental health session with Kim Little that was illegally recorded, and then Nurse Cool threw him out of the session (*id*. at

---

[3] On May 20, 2024, the plaintiff filed a notice of appeal as to Judge Dawson's order denying the plaintiff's motion for a temporary restraining order (doc. 202; *see* docs. 65, 183). On May 30, 2024, the plaintiff filed another notice of appeal as to Judge Dawson's order dismissing the claims and defendants noted above (doc. 211; *see* docs. 178, 179). As the plaintiff's appeals before the Court of Appeals for the Fourth Circuit have no bearing on the medical indifference claim at issue against the remaining defendants in the pending motions for summary judgment, the court sees no reason to stay consideration of the motions. *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982) ("The filing of a notice of appeal is an event of jurisdictional significance – it confers jurisdiction on the court of appeals and divests the district court of its control *over those aspects of the case involved in the appeal*." (emphasis added) (citations omitted)).

8, 20). The next day, the plaintiff was seen by Savannah Wall with the South Carolina Department of Mental Health ("SCDMH"), but he did not get the treatment he requested (*id.*).

On May 22, 2023, the plaintiff alleges that he fell at the sink in his cell (doc. 9 at 17). His injury was documented by officers, and medical was summoned (*id.*). The plaintiff contends that he was not provided ice, an ace bandage, a crutch, wheelchair, or medication after hurting his ankle (*id.* at 17-18). The next day, the plaintiff's ankle was x-rayed, but the plaintiff had to hobble around and use a broom for a crutch (*id.* at 18). The plaintiff further contends that a nurse falsified the medical records and indicated that he did not complain of pain (*id.*).

On May 31, 2023, the plaintiff contends that a South Carolina Department of Health and Environmental Control ("DHEC") representative came to see him about his complaints that he had syphilis, and Nurse John Doe with DHEC only tested the plaintiff for AIDS and syphilis and not other sexually transmitted diseases (doc. 9 at 21). Despite the plaintiff not receiving official treatment, the test results over the next month indicated that the plaintiff's condition improved (*id.*). Due to this, the plaintiff alleges that his food was being drugged (*id.* at 7, 21-22).

During the beginning of June 2023, the plaintiff documented "enormous amounts of blood coming from rectum" (doc. 9 at 22). The plaintiff contends that he was taken for medical treatment on June 8, 2023, and was examined, but alleges that the doctor misdiagnosed him as having hemorrhoids (*id.*). The plaintiff further contends that the medical records were falsified to show that the plaintiff had been manipulating an internal hemorrhoid even though that is not what the plaintiff did (*id.*). Two days later, on June 10, 2023, Nurse Springer told the plaintiff to stop putting in sick calls for blood in his stool and that if he needed medical attention to call his lawyer (*id.* at 23). The plaintiff claims that he showed staff that walked by his cell evidence of his bloody stool on June 15, 2023 (*id.* at

5

23–24). The plaintiff was then told that he would continue being charged for medical treatment when he continued reporting blood in his stool (*id*. at 24).

The plaintiff further alleges that on July 4, 2023, he fell and injured his knee (doc. 9 at 17). On July 20, 2023, the plaintiff was taken for emergency care and diagnosed with ulcerative colitis, which he contends occurred because of his untreated syphilis (*id*. at 23). The plaintiff further alleges that he requested contact solution at no charge because he was an indigent detainee, but none was provided because he could not afford it (*id*. at 17). He further alleges that Sheriff Reynolds denied his requests to obtain treatment for his eyes by an outside doctor (*id*.). The plaintiff contends that he complained about trouble with his eyesight, but his requests were ignored (*id*. at 19).

The plaintiff alleges that the defendants' deliberate indifference to his serious medical needs caused neurological damage and blindness and ulcerative colitis due to untreated syphilis and that he had to go to the hospital for treatment for several weeks as a result (doc. 9 at 12-14, 31). For relief, the plaintiff seeks an order requiring the LCDC to provide medical treatment for other detainees and money damages (*id*. at 31).

At the time of the allegations in the plaintiff's amended complaint, third party medical provider Southern Health Partners, Inc. ("SHP"), which provides medical services at the LCDC pursuant to a contract with Laurens County, employed defendants Nurse Springer, Nurse Cool, Nurse Grant (Morris) ("Nurse Morris"), and Kim Little (collectively, "the SHP defendants"). In support of their motion for summary judgment, the SHP defendants submitted the affidavit of defendant Nurse Springer, who was the Medical Team Administrator at the LCDC at the time of the allegations in the plaintiff's complaint, along with the plaintiff's medical records from the LCDC (doc. 127-2, Springer aff. & ex. 1, med. records).

The plaintiff was booked into the LCDC on or about April 20, 2023 (doc. 127-2, Springer aff. ¶ 2; *id.*, ex. 1, med. records, SHP-Budney 000073-000074). At booking, a

6

medical intake screening was performed by correctional officers (SHP-Budney 000073-000074). The plaintiff reported that he had a history of high blood pressure and syphilis for which he currently did not take any medications (*id.*). The plaintiff further reported that he was allergic to certain medications, including penicillin (*id.*). Nurse Springer requested the plaintiff's medical records from the Greenville County Detention Center ("GCDC") (*id.* 000062-000064; Springer aff. ¶ 6). Those records showed that the plaintiff had been last treated for active syphilis with antibiotics in December 2022 (Springer aff. ¶ 6; SHP-Budney 000013).

On April 27, 2023, the plaintiff filed a medical request in the kiosk complaining about "obvious symptoms of communicable disease syphilis" (doc. 127-2, Springer aff. ex. 1, SHP–Budney 000067). On April 28, Nurse Cool saw the plaintiff at sick call (*id.* 000065-000066). She noted that the plaintiff's vitals were normal, but that the plaintiff complained of "bumps on the tip of penis" and stated he had suffered from syphilis in the past and thought he may have symptoms again (*id.*). Therefore, Nurse Cool initiated the "protocol for STD testing" (*id.*; Springer aff. ¶ 7). Nurse Cool also conducted a complete health history on the plaintiff (SHP-Budney 000068-000069). The plaintiff reported that he was legally blind and suffering from dementia (*id.*). Nurse Springer notified DHEC that there was a possible case of syphilis (*id.* 000067; Springer aff. ¶ 7).

On May 22, 2023, the plaintiff complained through the kiosk that he needed to go to the hospital to be tested and treated for syphilis, to get an x-ray of his injured foot, and to get a penicillin shot (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000037, 000051-000052). Nurse Springer saw the plaintiff and advised him that DHEC was scheduled to come to the jail to conduct testing in June (*id.* 000037; Springer aff. ¶¶ 7, 10). Nurse Springer further noted there was "no redness or swelling to [the plaintiff's] right foot," but she would coordinate an x-ray out of an abundance of caution (SHP-Budney 000001, 000037; Springer aff. ¶ 10). The plaintiff did not request further pain medication (Springer

7

aff. ¶ 10). The x-ray was ordered on May 23, 2023 (*id.*; SHP-Budney 000037, 000075). It was read by an outside radiologist and showed no abnormalities (SHP-Budney 000037, 000075; Springer aff. ¶ 10). The plaintiff did not complain of any further issues regarding his foot (SHP-Budney 000037; Springer aff. ¶ 10). During this visit, Nurse Springer also noted that the plaintiff was "adamant" that he was suffering from neurosyphilis, but that it had "been ruled out" by Dr. Robert Williams, M.D., the Medical Director of the LCDC (SHP-Budney 000037; Springer aff. ¶ 5). On May 26, Nurse Springer contacted DHEC regarding the plaintiff's syphilis complaints and to verify accuracy of his complaints (SHP-Budney 000037).

The plaintiff continued to put in numerous sick calls and other non-medical threats and complaints, to which the medical staff responded (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000043-000048, 000059; Springer aff. ¶ 8). On May 24, 2023, the plaintiff reported that he was sexually assaulted and requested counseling, which Nurse Springer coordinated with defendant Kimberly Little, LPC, the Mental Health Coordinator at the LCDC ("Ms. Little") (SHP-Budney 000060). Ms. Little set up bi-monthly mental health sessions with the plaintiff (*id.* 000038-000041, 000053-000058, 000060-000061). Nurse Springer or Nurse Cool was present in the appointments as they took place in the medical office (Springer aff. ¶ 13). Ms. Springer testified in her affidavit that the plaintiff was often belligerent and unruly in these appointments (*id.*).

Due to his many complaints regarding symptoms of syphilis, Nurse Springer was able to secure earlier testing for the plaintiff on May 31, 2023 (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000042; Springer aff. ¶ 7). DHEC tested the plaintiff, and he tested negative for active syphilis (SHP-Budney 000042; Springer aff. ¶ 7).

On June 1, 2023, the plaintiff complained that he was not given contact solution even though he was "diagnosed as legally blind without corrective lenses" and further complained that medical staff told him indigent inmates could not receive eye care

8

(doc. 127-2, Springer aff. ex. 1, SHP-Budney 000048). Nurse Springer informed the plaintiff that the kiosk was available for him to purchase contact solution (*id.* 000042; Springer aff. ¶ 12). Nurse Springer attested in her affidavit that contact solution is not a medical supply that is available to detainees through the medical staff (Springer aff. ¶ 12).

Beginning on May 28, 2023, the plaintiff filed his first of many medical requests and sick calls complaining of blood in his stool, which he claimed was an obvious symptom of syphilis (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000042-000046; Springer aff. ¶ 9). Nurse Springer addressed each complaint through the kiosk (SHP-Budney 000042-000046; Springer aff. ¶ 9). On June 2, 2023, Nurse Cool responded to the plaintiff's cell after he complained of "blood in the toilet" (SHP-Budney 000037; Springer aff. ¶ 9). Nurse Cool observed a "small amount of blood" and called Dr. Williams (SHP-Budney 000037; Springer aff. ¶ 9). Dr. Williams advised Nurse Cool to "continue monitoring" the plaintiff's condition and prescribed a hemorrhoid cream to be applied as needed (SHP-Budney 000001, 000037; Springer aff. ¶ 9). The next day, Nurse Cool went to the plaintiff's cell to administer the ordered cream, but the plaintiff "refused hemorrhoid cream and started threatening [Nurse Cool] more about a law suit" (SHP-Budney 000036). Later that same day, Nurse Cool was again called to the plaintiff's cell for a complaint of bloody stool (*id.*). Nurse Cool attempted to explain to the plaintiff Dr. Williams's orders, but the plaintiff "kept yelling" at Nurse Cool regarding her nursing qualifications (*id.*). On June 8, Dr. Williams examined the plaintiff and noted no blood and no mass (*id.*). Dr. Williams prescribed hemorrhoid medication (*id.* 000001, 000036; Springer aff. ¶ 9). It was noted in the plaintiff's medical records on June 11 that the plaintiff was seen on the camera "digging" in his rectum to cause the hemorrhoid to bleed (SHP-Budney 000042; Springer aff. ¶ 9).

On June 20, the plaintiff was again tested for syphilis by DHEC (doc. 127-2, Springer aff ex. 1, SHP-Budney 000009-000011; Springer aff. ¶ 8). He tested positive for antibodies (showing a past infection) but negative for an active infection as before (SHP-

Budney 000009-000011; Springer aff. ¶ 8). Because the plaintiff still complained of rectal bleeding, on June 29, 2023, medical staff sent the plaintiff to the emergency room to be examined and for lab work (SHP-Budney 000035; Springer aff. ¶ 9). At the emergency room, the plaintiff was negative for "traces of blood," and his lab work and vitals were normal (SHP-Budney 000035; Springer aff. ¶ 9). The plaintiff was medically cleared to return to the LCDC with no prescriptions (SHP-Budney 000002-000008, 000035; Springer aff. ¶ 9; doc. 171 at 9-14). Around this time, the plaintiff began to complain that the medical staff was secretly placing antibiotics in his food because his symptoms were improving (SHP– Budney 000035). The medical records show that while he was detained in the LCDC the plaintiff was never diagnosed with an active case of syphilis, ocular syphilis, neurosyphilis, or ulcerative colitis, and no antibiotic was ever ordered for him by a qualified medical provider (*see generally id.* 000001-000075; Springer aff. ¶¶ 5-6).

On July 4, 2023, the plaintiff stated he "fell on the floor by the kiosk" and thought "he tore his ACL" (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000035; Springer aff. ¶ 11). Nurse Morris, a traveling nurse for SHP who was assigned to the LCDC at the time, noted in the plaintiff's medical records that the plaintiff demanded an emergency room visit, but Nurse Morris told the plaintiff that he had no symptomology supporting any issue that could be life threatening (SHP-Budney 000035). Nurse Morris then returned to the control room to watch camera footage, which he noted clearly showed the plaintiff "walking over the seat at the kiosk to entangle his leg irons to have him fall on the floor" (*id.*). The plaintiff could be seen from the control room ambulating around the unit after the alleged fall occurred (*id.*). The plaintiff made no further medical complaint related to this incident (Springer aff. ¶ 11).

Defendant Savannah Wall ("Ms. Wall") is employed by the SCDMH as a Mental Health Professional I and submitted her affidavit in support of her motion for summary judgment (doc. 131-2, Wall aff.¶ 1). Ms. Wall is part of the Mobile Crisis

10

Community Crisis Response and Intervention Program, which has as one of its purposes to facilitate 24-hour access to adult clinical screening for those who might be experiencing crisis (*id.*). She was called in that capacity to the LCDC by Nurse Springer to evaluate the plaintiff on June 16, 2023 (*id.* ¶ 2). Ms. Wall's assessment of the plaintiff lasted for approximately 45 minutes, and a copy of the plaintiff's screening form is attached as exhibit A to her affidavit (*id.*, ex. A, screening form). Ms. Wall testified that the plaintiff denied suicidal ideations, homicidal ideations, auditory verbal hallucinations, and substance abuse; he was clean shaven, well groomed, had no body odor, and appeared to be in no acute distress; and while he indicated that he was being mistreated at the jail in numerous ways, from his civil rights being violated by his basic human needs not being met, to not being allowed to shower and being sexually assaulted by another inmate, he did not exhibit signs or symptoms of being in psychiatric distress (*id.* ¶ 3). Accordingly, Ms. Wall determined that the plaintiff did not meet the criteria for services through the SCDMH (*id.* ¶ 4). Further, she did not observe any behavior that indicated the plaintiff was suffering from mental health issues or was being mistreated by the jail staff in any way (*id.*).

With his motions for summary judgment filed on May 6 and June 5, 2024, the plaintiff submitted medical records from Prisma Health Greenville Memorial Hospital Emergency Department and DHEC dated December 29, 2022 (doc. 186-6 at 4-5; doc. 219-1 at 3-4), which was during the plaintiff's incarceration in the GCDC, prior to his time in the LCDC (*see* doc. 127-2, Springer aff. ex. 1, SHP-Budney 000013). The documents note that the plaintiff had a reactive RPR (rapid plasma reagin) of 1:16 on December 17, 2022; DHEC notified the GCDC that the plaintiff needed evaluation for neurosyphilis and occular syphilis; and the plaintiff was referred to the hospital for that purpose (doc. 219-1 at 3-4). At the hospital, the plaintiff reported that his chief concern was that since he had been diagnosed with syphilis three years prior, he had worsening vision and what he described as dementia (doc. 186-6 at 5). He reported that he had not had any acute change in his

11

vision or his memory recently, but his concern was that he just had a repeat test that showed a reactive RPR of 1:16, and he was concerned if he was treated with doxycycline again that he may continue to progress and get worse (*id.*). The plaintiff was treated with penicillin and discharged the following day (*id.; see* doc. 127-2, Springer aff. ex. 1, SHP-Budney 000013).

The plaintiff also submitted other medical records with his motion for summary judgment filed on June 5, 2024 (doc. 219) and additional records on June 13, 2024 (doc. 221-1). Specifically, the plaintiff provided documents from the SCDC showing the results of a lab test on July 14, 2023, the day after the plaintiff was transferred from the LCDC to the SCDC (doc. 219-1 at 1). The lab results show a reactive RPR of 1:32 (*id.*), which the plaintiff notes is "4X higher than the SHP defendants' 1/8 claim" (doc. 219 at 1; *see* doc. 127-2, Springer aff. ex. 1, SHP-Budney 000009 (6/20/23 lab test showing syphilis reactive RPR 1:8 titer). Also included are some of the plaintiff's medical records from the SCDC (doc. 221-1 at 3-9). These records show that, shortly after the plaintiff's transfer to the SCDC, an SCDC nurse contacted the Pender County Jail, where the plaintiff had been incarcerated at some point previously (*id.* at 3). The nurse at the Pender County Jail indicated that the plaintiff had syphillis that was untreated for five years, which led to neurosyphillis, and the plaintiff was treated with antibiotics in July 2022 (*id.*). The nurse further indicated that while the plaintiff had multiple complaints of blood in his stool, all tests came back negative (*id.*). The SCDC medical records further show that on July 20, 2023, it was noted that due to the plaintiff's complaints of vision loss, excessive bloody stools, and a positive RPR titer of 1:32, a consultation for evaluation for neurosyphilis was authorized (*id.* at 5). The plaintiff was admitted to the hospital from July 20, 2023, to August 4, 2023, during which time he was treated with continuous penicillin (*id.* at 6-8). The plaintiff's diagnoses were neurosyphilis, ocular syphilis, and late latent syphilis (*id.* at 7). The documents also include medical records from MUSC Health in Charleston showing that the

plaintiff was admitted to the hospital on April 1, 2024 (doc. 219-1 at 2). The hospital progress notes state that "neurosyphilis found at previous facility," and the plaintiff had been treated for neurosyphilis for two weeks in July and August 2023 (*id.*). The plaintiff was treated with IV antibiotics during his stay at MUSC, and he was discharged on April 12, 2024 (*id.*).

As noted above, the plaintiff contacted the Clerk of Court on June 24, 2024, and stated that he had been released from prison.

## APPLICABLE LAW AND ANALYSIS

### *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 states as to a party who has moved for summary judgment: "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). As to the first of these determinations, a fact is deemed "material" if proof of its existence or nonexistence would affect the disposition of the case under the applicable law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the district court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings; rather, he must demonstrate that specific, material facts exist that give rise to a genuine issue. *Id.* at 324. Under this standard, the

13

existence of a mere scintilla of evidence in support of the plaintiff's position is insufficient to withstand the summary judgment motion. *Anderson*, 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude the granting of the summary judgment motion. *Id.* at 248. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Id.*

### Pretrial Detainee Medical Indifference Claim

The plaintiff's remaining medical indifference claim is alleged against the SHP defendants, Savannah Wall, and Sheriff Reynolds. To establish liability under Section 1983, the plaintiff "must establish three elements: (1) the deprivation of a right secured by the constitution or a federal statute; (2) by a person; (3) acting under color of state law." *Campbell v. Florian*, 972 F.3d 385, 392, n.5 (4th Cir. 2020) (citation omitted), *as amended* (Aug. 28, 2020). To support a Section 1983 claim for failure to provide adequate medical care, the plaintiff must show the defendants' "acts or omissions [were] sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A pretrial detainee's claim based upon deliberate indifference to a medical need is properly brought pursuant to the Fourteenth Amendment. *Moss v. Harwood*, 19 F.4th 614, 624 (4th Cir. 2021) (citing *Martin v. Gentile*, 849 F.2d 863 (4th Cir. 1988)).

To establish a claim for deliberate indifference to a serious medical need, a pretrial detainee must show that (1) he had a medical condition or injury that posed a substantial risk of serious harm; (2) the defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the detainee was harmed. *Short v. Hartman*, 87 F.4th 593, 611 (4th Cir. 2023) (citing *Darnell v. Pineiro*, 849 F.3d 17, 35 (2d Cir. 2017); *Gordon v. County of Orange*, 888 F.3d

1118, 1124–25 (9th Cir. 2018); *Miranda v. County of Lake*, 900 F.3d 335, 352–53 (7th Cir. 2018); *Brawner v. Scott County*, 14 F.4th 585, 596–97 (6th Cir. 2021)). The Court of Appeals for the Fourth Circuit recently stated:

> The objective test we adopt today differs from our prior subjective test in one respect only. The plaintiff no longer has to show that the defendant had actual knowledge of the detainee's serious medical condition and consciously disregarded the risk that their action or failure to act would result in harm. That showing remains sufficient, but it is no longer necessary. Now, it is sufficient that the plaintiff show that the defendant's action or inaction was, in *Kingsley*'s words, "objectively unreasonable," 576 U.S. at 397, 135 S.Ct. 2466: that is, the plaintiff must show that the defendant should have known of that condition and that risk, and acted accordingly. Or as the Supreme Court put it when describing civil recklessness in *Farmer*, it is enough that the plaintiff show that the defendant acted or failed to act "in the face of an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Farmer*, 511 U.S. at 836, 114 S.Ct. 1970. We go no further.
>
> To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. *See Kingsley*, 576 U.S. at 396, 135 S.Ct. 2466; *Brawner*, 14 F.4th at 596; *Gordon*, 888 F.3d at 1125; *Miranda*, 900 F.3d at 353–54. Negligence was not enough before, *Stevens*, 68 F.4th at 931, and it is not enough now.

*Short v. Hartman*, 87 F.4th 593, 611-12 (4th Cir. 2023).

### SHP Defendants' Motion and the Plaintiff's Motions

As set out above, the plaintiff was a pretrial detainee in the LCDC from April 20, 2023, until he was transferred to the SCDC on July 13, 2023. The plaintiff alleges the SHP defendants violated his constitutional rights by: (1) violating an extradition order requiring his medical needs be met when he was extradited from North Carolina to South Carolina; (2) refusing to test, treat, and/or contact trace him for syphilis and lying in the medical records; (3) refusing to provide and/or interrupting his mental health appointment; (4) refusing to treat him after he fell in his cell on May 22, 2023, and falsifying medical

15

records related to this incident; and (5) denying him contact solution (doc. 9). He further alleges that he fell on July 4, 2023, in front of defendant Nurse Morris; Dr. Williams misdiagnosed his bloody stool as a hemorrhoid; and the nurses falsified medical records to reflect the hemorrhoid diagnosis (*id.*).

In their motion for summary judgment, the SHP defendants first argue that the plaintiff has failed to allege or prove any acts that could constitute deliberate indifference with respect to Ms. Little and Nurse Morris (doc. 127-1 at 11). In his response to the SHP defendants' motion for summary judgment, his sur-reply, and in his own motions for summary judgment, the plaintiff does not address his claims against these defendants (*see generally* docs. 141, 170, 186, 219). The undersigned agrees with the SHP defendants that summary judgment should be granted in favor of Ms. Little and Nurse Morris, as discussed below.

The plaintiff alleges that he fell in front of Nurse Morris on July 4, 2023 (doc. 9 at 17), and his medical records document this as the only interaction between the two (doc. 127-2, Springer aff. ex. 1, SHP – Budney at 000035; Springer aff. ¶ 11). Nurse Morris saw the plaintiff, noted no injuries, observed the plaintiff ambulating normally on the camera, and the plaintiff had no further complaints (SHP – Budney at 000035). The plaintiff has failed to specifically allege or show how Nurse Morris acted with deliberate indifference in this interaction. Likewise, as to Ms. Little, the plaintiff alleges only that Nurses Springer and Cool denied the plaintiff access and otherwise interrupted his mental health appointments with Ms. Little, the mental health provider (doc. 9 at 8, 20). The medical records submitted by the SHP defendants establish that Ms. Little saw the plaintiff at regular appointments (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000038-000041, 000053-000058, 000060-000061; Springer aff. ¶ 13).  The plaintiff has submitted no evidence that he was ever denied access to his mental health appointments.  As the plaintiff has failed to affirmatively show how Ms. Little or Nurse Morris acted to personally deprive

him of his constitutional rights, summary judgment should be granted in their favor. *See Williamson v. Stirling*, 912 F.3d 154, 171 (4th Cir. 2018) ("To establish personal liability under § 1983 . . . the plaintiff must affirmatively show that the official charged acted personally in the deprivation of the plaintiff's rights. That is, the official's own individual actions must have violated the Constitution. Importantly, mere knowledge of such a deprivation does not suffice." (internal citations, quotation marks, and alterations omitted)).

The SHP defendants further argue that the plaintiff has presented no evidence that he was suffering from a medical condition or injury that posed a substantial risk of serious harm during his time in the LCDC. The undersigned agrees that the plaintiff's allegations regarding the SHP defendants' alleged failure to provide him with contact solution fail in this regard. Specifically, Nurse Springer testified in her affidavit that contact solution is not a medical supply available through the medical department, and it is available for purchase through the LCDC kiosk (doc. 127-2, Springer aff. ¶ 12; SHP-Budney 000042, 000048). However, the undersigned will assume for purposes of this motion that the plaintiff's previous syphilis diagnosis, rectal bleeding, and his fall on May 22, 2023, are medical conditions or injuries that meet the first factor of a deliberate indifference claim and will further consider the plaintiff's allegations regarding these conditions below.

The SHP defendants argue in their motion that the plaintiff has failed to establish that they were deliberately indifferent to any serious medical need during his time in the LCDC (doc. 127-1 at 12-16). In his motions for summary judgment, the plaintiff argues that he has "submitted irrefutable evidence of [the SHP defendants'] refusal to adequately treat a communicable disease while Plaintiff was under their care" (doc. 186 at 1) and that the evidence he has submitted leads to the "obvious conclusion . . . that plaintiff had this disease [neurosyphilis] at the [LCDC]" (doc. 219 at 2). As noted above, in order to establish a deliberate indifference claim, the plaintiff must show that a defendant intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk

17

that the condition posed; the defendant knew or should have known (a) that the detainee had that condition and (b) that the defendant's action or inaction posed an unjustifiably high risk of harm; and as a result, the detainee was harmed. *Short*, 87 F.4th at 611 (citations omitted).

The evidence before the court shows that the plaintiff was never diagnosed with an *active* case of syphilis, ocular syphilis, neurosyphilis or ulcerative colitis while he was detained in the LCDC (*see generally* doc. 127-2, Springer aff. ex. 1, SHP-Budney 000001-000075; Springer aff. ¶¶ 5-6). Further, with regard to his complaint of rectal bleeding, no presence of blood was noted during the plaintiff's physical examinations. However, because the plaintiff continued to complain of rectal bleeding, he was sent to the emergency room to be examined and for lab work, but the plaintiff was negative for "traces of blood," and his lab work and vitals were normal (SHP-Budney 000035). According to Dr. Williams, the rectal bleeding was a symptom of possible hemorrhoids, which was treated with over the counter medications. The plaintiff's medical records show that the SHP defendants interacted often with the plaintiff, and, after every complaint, medical or otherwise, the SHP defendants obtained higher levels of care for him when needed; responded when he made sick calls/ medical requests; promptly arranged for appointments; coordinated care with all providers, including Dr. Williams, the x-ray tech, radiologist, mental health provider, DHEC, and the emergency room on the plaintiff's behalf; and carried out (or attempted to carry out) all medical orders for the plaintiff (*see generally id.* 000001-000075). As noted, DHEC testing in May and June 2023 while the plaintiff was in the LCDC was positive for antibodies (showing a past infection) but negative for an active syphilis (SHP-Budney 000009-000011; Springer aff. ¶¶ 7-8). *See Alton v. Corr. Med. Servs.*, C.A. No. WMN-10-2365, 2011 WL 1466503, at *6 (D. Md. Apr. 18, 2011) (finding no deliberate indifference where the evidence showed that the plaintiff's complaints regarding abdominal pain were taken seriously, he was provided with appropriate diagnostic

tests, and it was determined through those tests that the plaintiff did not require surgery). As argued by the SHP defendants, it appears that the plaintiff's allegations of deliberate indifference to medical needs "are based on his preference for different treatment than he was provided; however, the plaintiff is not constitutionally entitled to the treatment of his choice." *Johnson v. Lawson*, C.A. No. 6:22-cv-4180-TMC, 2024 WL 834477, at *2 (D.S.C. Feb. 28, 2024) (citing *Sharpe v. S.C. Dep't of Corrs.*, 621 F. App'x 732, 733 (4th Cir. 2015) (noting that "mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief" under § 1983)).

In his response to the motion for summary judgment, the plaintiff argues that he has established his deliberate indifference claim because the records from his previous incarceration in the GCDC show that there was a note in December 2022 recommending medical staff "rule out" ocular and neurosyphilis after he complained of the conditions (doc. 141 at 1; *see* doc. 127-2, Springer aff. ex. 1, SHP-Budney 000026). On May 22, 2023, Nurse Springer requested the plaintiff's prior medical records from the GCDC (SHP–Budney 000019), and GCDC records are in the medical records provided by the SHP defendants (*id.* 000012-00033). Importantly, the December 2022 note was prior to the plaintiff's time in the LCDC, and the recommendation to "rule out" ocular and neurosyphilis was not made to the SHP defendants. Moreover, neuro and ocular syphilis were later ruled out by the Medical Director of the LCDC, Dr. Williams, who is not a defendant in this action (*id.* 000037; Springer aff. ¶ 5). The SHP nurses – who are defendants in this action – cannot diagnose or prescribe medication as LPNs but can only carry out orders given for diagnoses and medication prescriptions issued by qualified medical providers (Springer aff. ¶ 3). The GCDC records show that the plaintiff received antibiotic treatment in December 2022 — just a few months before he was booked into the LCDC, and no lab result ever confirmed that the plaintiff had active syphilis while in the LCDC. Based upon the foregoing, the GCDC

19

records do not support the plaintiff's claim of deliberate indifference against the SHP defendants.

The plaintiff also claims in his response that the delay in testing him for a communicable disease establishes his deliberate indifference claim against the SHP defendants (doc. 141 at 2).  Specifically, he claims he was told that he must wait for a prearranged DHEC "Testing Fair" that was scheduled at the LCDC for June 20, 2023, before he could be tested for syphilis (*id.*). However, the medical record shows that due to the plaintiff's complaints, Nurse Springer was able to secure an earlier appointment for the plaintiff's testing on May 31, 2023 (doc. 127-2, Springer aff. ¶ 7). Nurse Springer testified that those results were negative (*id.*; SHP-Budney 00037, 00042).  The June 20th testing date, during which the plaintiff was tested again, was the scheduled DHEC appointment at the LCDC during which many other inmates/detainees were tested. Following that testing, DHEC forwarded electronic lab results for those tested, including the plaintiff, which showed the plaintiff did not have an active syphilis infection (SHP-Budney 000009-00011).

Further, a delay in treatment, must also be accompanied of evidence of harm sustained by the delay. *See Lewallen v. Mitchell*, C.A. No. 9:20-cv-3817-SAL-MHC, 2021 WL 5813119, at *15 (D.S.C. Oct. 19, 2021)("[A] detainee complaining that a delay in medical treatment rose to a constitutional violation must place verifying medical evidence in the record to establish the detrimental effect of delay to succeed." (citations omitted)), *R&R adopted by* 2021 WL 5810512 (D.S.C. Dec. 7, 2021). As noted, the plaintiff has presented evidence with his motions for summary judgment that while he was in the GCDC, it was noted that he had a previous diagnosis of neurosyphilis, and the GCDC referred him for evaluation of complaints of signs/symptoms of ocular and neurosyphilis prior to his transfer to the LCDC (doc. 221-1 at 3). The plaintiff has also presented evidence that after his transfer to the SCDC from the LCDC, lab results showed a reactive RPR of 1:32 (doc. 219-1 at 1); he was admitted to the hospital from July 20, 2023, to August 4, 2023, with

20

diagnoses of neurosyphilis, ocular syphilis, and late latent syphilis, and he was treated with continuous penicillin (doc. 221-1 at 6-8); and he was admitted to the hospital again from April 1-12, 2024, for treatment with IV antibiotics for neurosyphilis (doc. 219-1 at 2). However, the plaintiff has failed to show how any delay in treatment for the nearly three months he was detained in the LCDC, during which time the plaintiff was tested twice by DHEC with negative results for active syphilis, caused his condition to worsen. No doctor diagnosed the plaintiff with active syphilis, and no testing established an active case of syphilis while the plaintiff was detained in the LCDC. Moreover, as noted by the SHP defendants, there is no documentation in the record that the plaintiff complained of syphilis symptoms to the LCDC medical staff following his referral to the emergency room on June 29, 2023, for complaints of syphilis and rectal bleeding, at which time the plaintiff was cleared by the emergency room physicians to return to the detention center (doc. 171 at 9-14; doc. 127-2, Springer aff. ex. 1, SHP-Budney 000002-000008). Notably, the plaintiff asserts in this lawsuit that the SHP defendants must have been adding antibiotics to his food because the decrease in his titer levels noted in his DHEC lab test on June 20, 2023, "signifies a successful treatment" (doc. 9 at 7, 21-22).

In his response to the motion for summary judgment, the plaintiff argues that the SHP defendants intentionally misdiagnosed his rectal bleeding as a hemorrhoid and "intentionally treated plaintiff incorrectly" (doc. 141 at 2-3). The plaintiff's medical records indicate that after Nurse Cool interacted with the plaintiff in his cell after he complained of rectal bleeding, Nurse Cool called Dr. Williams who prescribed hemorrhoid cream for the plaintiff based upon the symptoms that were relayed to him. (doc. 127-2, Springer aff. ex. 1, SHP-Budney 00001, 00035-00037, 00042). The plaintiff was also put on the list to be seen by Dr. Williams at his next visit to the LCDC, and at that visit, after a physical exam, Dr. Williams again determined that the plaintiff was likely suffering from hemorrhoids (*id.*). Dr. Williams prescribed further medication to treat hemorrhoids (*id.*). As noted, Dr. Williams

21

is not a defendant in this action, and the SHP nurses did not and cannot diagnose or prescribe medication (doc. 127-2, Springer aff. ¶ 3). As described above, due to his continued complaints, the medical staff at the LCDC sent the plaintiff to the emergency room to be assessed for rectal bleeding (SHP-Budney 00002-00008; doc. 171 at 9-14). The plaintiff was negative for traces of blood, his lab work was within normal limits, and he was medically cleared to return to the LCDC with no prescriptions (SHP-Budney 00002-00008, 000035, Springer aff. ¶ 9). There is no indication that the SHP defendants ever ignored the plaintiff's rectal bleeding in any way or that they provided any false information to the emergency room or any other outside provider.

On April 25, 2024, the plaintiff submitted documents that he claims prove that the SHP defendants misrepresented in their motion for summary judgment the care provided to him during his incarceration in the LCDC (doc. 171 at 7; docs. 140, 159, 160).[4] The plaintiff attaches his hospital records from his visit to the emergency room on June 29, 2023 (doc. 171 at 9-14). As argued by the SHP defendants, however, the records confirm what was relayed to Nurse Springer by hospital staff and in the discharge instructions, which are part of the LCDC medical records submitted by the SHP defendants with the motion for summary judgment (doc. 175 at 1-3) – that the plaintiff was seen in the emergency room for complaints of rectal bleeding (doc. 127-2, Springer aff. ¶ 9; SHP-Budney 00002-00008, 000035). The hospital record further confirms that the exam was unremarkable (doc. 171 at 10-11). Further, the hospital record contains a note from Nurse

---

[4] Among his many motions, the plaintiff filed a motion for sanctions (doc. 140), a motion entitled "They Done," and an "Accountability" motion (doc. 160), accusing the SHP defendants and their counsel of withholding portions of his medical record. The SHP defendants have repeatedly noted that every record in the plaintiff's LCDC medical file was attached to Nurse Springer's affidavit (doc. 144 at 3; doc. 151 at 2; *see* doc. 127-2, Springer aff. ex. 1, medical record). Further, Nurse Springer verified that the records are true and correct copies of the original records; were prepared by the personnel of the medical department at or near the time of the occurrence of the matters within, or from information transmitted by a person with knowledge of those matters; were kept in the course of regularly conducted activity; and were made as a regular practice of the SHP defendants' providing health and mental health services at the LCDC (Springer aff. ¶ 4).

Springer to the emergency room staff that is not part of the LCDC medical record, but, as its contents reveal, appears to have been submitted to medical staff at the emergency room when the plaintiff arrived (*id.* at 14).

Moreover, to the extent the plaintiff alleges or can show that he was negligently misdiagnosed by a qualified medical professional while in the LCDC, such a showing is insufficient to establish deliberate indifference. *See Short*, 87 F.4th at 611-12 ("To be clear, it is still not enough for the plaintiff to allege that the defendant negligently or accidentally failed to do right by the detainee. Negligence was not enough before, and it is not enough now."). Further, as noted, the SHP defendants who were involved in the plaintiff's medical treatment are LPNs and therefore do not diagnose patients or prescribe medications and can only carry out orders given for diagnoses and medication prescriptions issued by qualified medical providers (doc. 127-2, Springer aff. ¶ 3).

The plaintiff has also failed to show that the SHP defendants' actions were objectively unreasonable regarding his medical treatment after he fell in his cell on May 22, 2023. The medical records show that Nurse Springer noted there was "no redness or swelling to [the plaintiff's] right foot," but she would coordinate an x-ray out of an abundance of caution (doc. 127-2, Springer aff. ex. 1, SHP-Budney 000001, 000037; Springer aff. ¶ 10). The plaintiff did not request further pain medication (Springer aff. ¶ 10), and an x-ray was ordered on May 23, 2023 (*id.*; SHP-Budney 000037, 000075). It was read by an outside radiologist and showed no abnormalities (SHP-Budney 000037, 000075; Springer aff. ¶ 10), and the plaintiff did not complain of any further issues regarding his foot (SHP-Budney 000037; Springer aff. ¶ 10). *See Sharpe*, 621 F. App'x at 733 (noting that "mere disagreement between an inmate and medical staff regarding the proper course of treatment provides no basis for relief" under § 1983) .

Furthermore, there is simply no evidence in the record, other than the plaintiff's conclusory claims, that any of these defendants ever falsified any medical record

related to the plaintiff, denied the plaintiff access to mental health treatment, or put antibiotics in the plaintiff's food. With regard to the plaintiff's claim the defendants ignored an extradition order from North Carolina, the evidence shows that the plaintiff was transferred to the LCDC from the GCDC in Greenville, South Carolina (doc. 127-2, Springer aff. ¶ 2), and the plaintiff has submitted no evidence of an extradition order from North Carolina.

Based upon the foregoing, the plaintiff has not shown that the SHP defendants' actions or inactions in this case were objectively unreasonable or that he was harmed as the result of any such action or inaction. Accordingly, the undersigned recommends that the district court grant the SHP defendants' motion for summary judgment and deny the plaintiff's motions for summary judgment.

### Defendant Savannah Wall's Motion

The plaintiff alleges in his amended complaint that while detained in the LCDC, he was seen by Ms. Wall with the SCDMH in June 2023, but he did not get the treatment he requested (doc. 9 at 8, 20). He claims that Ms. Wall also failed to report the negligence and deliberate indifference of the medical staff that he described (*id.* at 8). As noted above, Ms. Wall submitted an affidavit in support of her motion for summary judgment, stating that she was called to the LCDC to evaluate the plaintiff on June 16, 2023 (doc. 131-2, Wall aff. ¶ 2). Her assessment of the plaintiff lasted for approximately 45 minutes, and she testified that the plaintiff denied suicidal ideations, homicidal ideations, auditory verbal hallucinations, and substance abuse; he was clean shaven, well-groomed, had no body odor, and appeared to be in no acute distress; and while he indicated that he was being mistreated at the jail in numerous ways, from his civil rights being violated by his basic human needs not being met, to not being allowed to shower and being sexually assaulted by another inmate, he did not exhibit signs or symptoms of being in psychiatric distress (*id.* ¶ 3 & ex. A, screening form). Ms. Wall determined that the plaintiff did not meet

the criteria for services through the SCDMH (*id.* ¶ 4). Further, she did not observe any behavior that indicated the plaintiff was suffering from mental health issues or was being mistreated by the jail staff in any way (*id.* ¶¶ 4-5).

Ms. Wall argues in her motion for summary judgment that the plaintiff cannot establish that she was deliberately indifferent to the plaintiff's serious medical need (doc. 131-1 at 1-7). The undersigned agrees. In his response to Ms. Wall's motion for summary judgment (doc. 156), the plaintiff fails to raise an issue of material fact by showing that he had a mental condition that posed a substantial risk of serious harm; Ms. Wall intentionally, knowingly, or recklessly acted or failed to act to appropriately address the risk that the condition posed; (3) Ms. Wall knew or should have known (a) that the plaintiff had that condition and (b) that her action or inaction posed an unjustifiably high risk of harm; and (4) as a result, the plaintiff was harmed. Accordingly, the undersigned recommends that the district court grant Ms. Wall's motion for summary judgment.

### Defendant Sheriff Reynolds' Motion

The plaintiff alleges in his amended complaint that Sheriff Reynolds denied him "basic eye care" and refused his father's offer to pay for the plaintiff to go to a doctor at an outside facility (doc. 9 at 17). Sheriff Reynolds argues in his motion for summary judgment that the plaintiff cannot establish that he was deliberately indifferent to the plaintiff's serious medical needs (doc. 147-1 at 4-5). The plaintiff does not specifically address the claim against Sheriff Reynolds in his response in opposition to the motion or in his affidavit (docs. 172, 172-1). The undersigned agrees that summary judgment in favor of Sheriff Reynolds is appropriate.

As argued by Sheriff Reynolds, the evidence submitted by the SHP defendants makes clear that the SHP staff was responsible for addressing the plaintiff's medical needs while he was detained in the LCDC (doc. 147-1 at 8-9). The plaintiff has failed to present evidence of Sheriff Reynolds' personal involvement in his medical care or

that Sheriff Reynolds acted or failed to act "in the face of an unjustifiably high risk of harm" that was known or so obvious it should have been known. *See Short*, 87 F.4th at 611. *See also Williamson*, 912 F.3d at 171 (noting a plaintiff must show that the official acted personally in violating the plaintiff's constitutional rights (citation omitted)); *Wilcox v. Brown*, 877 F.3d 161, 170 (4th Cir. 2017) (noting liability will only lie in § 1983 actions where it is "affirmatively shown that the official charged acted personally in the deprivation of the plaintiffs' rights" (citation omitted)).

Moreover, to the extent the plaintiff alleges that Sheriff Reynolds is vicariously liable by virtue of the actions of his subordinates, that claim also fails. Pure supervisory liability will not lie in Section 1983 actions. *Wright v. Collins*, 766 F.2d 841, 850 (4th Cir. 1985) ("The doctrine of respondeat superior has no application under this section." (quoting *Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977))). Rather, to hold a supervisor liable for a constitutional injury inflicted by a subordinate under Section 1983, the plaintiff must show facts establishing the following elements: (1) the supervisor had actual or constructive knowledge that a subordinate was engaged in conduct that posed "a pervasive and unreasonable risk" of constitutional injury to people like the plaintiff; (2) the supervisor's response was so inadequate as to constitute deliberate indifference or tacit authorization of the subordinate's conduct; and (3) there is an "affirmative causal link" between the supervisor's inaction and the plaintiff's constitutional injury. *Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994). The plaintiff has failed to produce evidence showing any of these required elements.

Based upon the foregoing, the district court should grant Sheriff Reynolds' motion for summary judgment.

## <u>CONCLUSION AND RECOMMENDATION</u>

Wherefore, based upon the foregoing, the motions for summary judgment filed by the SHP defendants (doc. 127), defendant Savannah Wall (doc. 131), and defendant Sheriff Reynolds (doc. 147) should be granted,[5] and the plaintiff's motions for summary judgment (docs. 186, 219) should be denied. Should the district court adopt this recommendation as to the motions for summary judgment, the nondispositive motions filed by the plaintiff (docs. 64, 70, 71, 73, 140, 153, 158, 159, 160) should be denied as moot.

IT IS SO RECOMMENDED.

s/Kevin F. McDonald
United States Magistrate Judge

August 9, 2024
Greenville, South Carolina

***The attention of the parties is directed to the important notice on the following page.***

---

[5] As noted, to the extent Sheriff Reynolds' motion for summary judgment is also filed on behalf of the already dismissed defendants (doc. 147), it should otherwise be found moot.

27

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); see Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

Robin L. Blume, Clerk
United States District Court
250 East North Street, Suite 2300
Greenville, South Carolina 29601

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation**. 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).